STATE OF MINNESOTA

COUNTY OF HENNEPIN

DISTRICT COURT

FOURTH JUDICIAL DISTRICT
CASE TYPE: PERSONAL INJURY

Ekatarina ("Kate") Vorotnikova Bozic and
Marin Bozic,

        Plaintiffs,

vs.

Jack & the Green Sprouts, Inc.,

        Defendant.

Court File No.:

Judge:

**SUMMONS**

**THIS SUMMONS IS DIRECTED TO THE ABOVE-NAMED DEFENDANT.**

1.    **YOU ARE BEING SUED.** The Plaintiffs have started a lawsuit against you. The Plaintiffs' Complaint against you is attached to this Summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this Summons.

2.    **YOU MUST REPLY WITHIN TWENTY-ONE (21) DAYS TO PROTECT YOUR RIGHTS.** You must give or mail to the person who signed this Summons a **written response** called an Answer within twenty-one (21) days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this Summons located at:

        Pritzker Hageman, P.A.
        100 University Avenue SE
        Minneapolis, MN 55414-2101

3.    **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiffs' Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiffs should not be given everything asked for in the Complaint, you must say so in your Answer.

4.    **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within twenty-one (21) days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiffs everything asked for in the Complaint. If you do not want to contest the claims stated in the Complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the complaint.

Page 1 of 2

**EXHIBIT**

**A**

5.    LEGAL ASSISTANCE. You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

6.    **ALTERNATIVE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that sanctions may be awarded pursuant to Minn. Stat. § 549.211.

Dated: March 10, 2026                      **PRITZKER HAGEMAN, P.A.**

By:    /s/ Eric Hageman
       Eric Hageman (MN #258180)
       100 University Avenue SE
       Minneapolis, MN 55414
       (612) 338-0202
       eric@pritzkerlaw.com

       *Attorney for Plaintiffs*

STATE OF MINNESOTA

COUNTY OF HENNEPIN

DISTRICT COURT

FOURTH JUDICIAL DISTRICT
CASE TYPE:  PERSONAL INJURY

Ekatarina ("Kate") Vorotnikova Bozic and
Marin Bozic,
                    Plaintiffs,

vs.

Jack & the Green Sprouts, Inc.,

          Defendant.

Court File No.:
Judge:

**COMPLAINT**

Plaintiffs, by and through counsel, allege as follows:

## THE PARTIES

1.       Plaintiffs Ekatarina ("Kate") Vorotnikova Bozic and Marin Bozic are residents of Excelsior, Hennepin County, Minnesota.

2.       On or about October 1, 2024, at approximately 17 weeks and 5 days of gestation, Kate Bozic suffered a pregnancy loss in connection with a severe intrauterine infection caused by her consumption of sprouts from Defendant Jack & the Green Sprouts, Inc. which were contaminated with *Listeria monocytogenes*.

3.       Defendant Jack & the Green Sprouts, Inc. is a Wisconsin business entity engaged in the business of sprouting, packaging, distributing, and selling sprouts, including alfalfa sprouts, for retail sale and human consumption, including distribution and sales into Minnesota. Defendant's principal place of business is N8477 770th Street, River Falls, WI 54022.

## JURISDICTION AND VENUE

4.       This Court has jurisdiction over this matter and the claims herein.

5.     This Court has personal jurisdiction over Defendant because Defendant, directly and/or through distribution channels, placed its sprouts into the stream of commerce for sale and consumption in Minnesota, and the injuries and damages in this action occurred in Minnesota.

6.     Venue is proper in Hennepin County because Plaintiffs reside in Hennepin County and substantial events giving rise to the claims occurred in Minnesota, including purchase and consumption of the product, as well as the resulting injuries.

7.     Actual and compensatory damages sought are within the jurisdictional limits of this Court.

8.     Plaintiff demands a jury trial as to all issues of fact herein.

## FACTS

### LISTERIOSIS

9.     Listeriosis is a serious illness resulting from consumption of food contaminated with the bacteria Listeria monocytogenes. *Listeria monocytogenes* is one of the most virulent and deadly foodborne pathogens with a fatality rate of over twenty percent. Virtually all people who contract listeriosis require hospitalization. Those who are elderly, immune-compromised, or pregnant are particularly vulnerable.

10.     Listeriosis during pregnancy carries a high risk of fetal loss. Numerous public health authorities, including the CDC, report that approximately one-quarter of pregnancy-associated listeriosis cases result in fetal loss or newborn death. Although maternal listeriosis is more commonly recognized later in pregnancy, infection in early pregnancy is associated with a particularly high risk of miscarriage.

11.     Studies have consistently shown that fetal loss associated with listeriosis is 100% in the first trimester and 70% or more in the second trimester of pregnancy.

12. Listeriosis can have a prolonged and variable incubation period, and pregnancy-associated cases have a longer incubation period than other forms, with reports describing ranges extending up to 70 days.

13. *Listeria monocytogenes* can persist and thrive in cool, damp areas of food production environments (including in floor drains and other wet niches) and can be transferred throughout a facility via water, mist, equipment, and workers' hands, clothing, and footwear. Unlike many other harmful bacteria, *Listeria monocytogenes* can survive and grow at refrigeration temperatures, and freezing has little detrimental effect on the organism. Because sprouts are commonly sold and consumed raw as ready-to-eat food without a kill step, sanitation, environmental monitoring, and controls to prevent cross-contamination are especially critical.

14. Sprouts, including alfalfa sprouts, have been linked to foodborne illness outbreaks in the past. The sprouting process requires warm, moist conditions that can promote rapid bacterial growth if contamination is present; contamination can originate in the seed supply or be introduced during sprouting/processing; and sprouts are often consumed raw without a kill step that would reduce or eliminate pathogens.

15. By way of example, the CDC reported that in 2016 it investigated a multistate outbreak of Shiga toxin–producing *E. coli* O157 infections linked to alfalfa sprouts produced by the Defendant, and that traceback from multiple locations converged on Jack & the Green Sprouts as the source. In the CDC's 2016 investigation, illnesses were reported in Minnesota and Wisconsin, and the CDC reiterated that sprouts are a known source of foodborne illness.

16. Because of the risks posed by *Listeria monocytogenes*, public health agencies actively monitor listeriosis cases. When illnesses are identified, laboratories may perform genetic

sequencing of isolates and compare results across cases. Whole genome sequencing ("WGS") can determine whether patient isolates are highly related and part of a common-source outbreak.

### THE 2024 LISTERIA OUTBREAK ASSOCIATED WITH SPROUTS

17.     In October 2024, the Minnesota Department of Health ("MDH"), Minnesota Department of Agriculture ("MDA"), the CDC, FDA, and other agencies investigated a multi-state outbreak of listeriosis associated with Jack & the Green Sprouts brand alfalfa sprouts.

18.     On October 7, 2024, MDH's Public Health Laboratory identified a human *Listeria monocytogenes* isolate closely related by whole genome sequencing ("WGS") to isolates recovered from alfalfa sprouts collected at retail in Minnesota, prompting a multi-state investigation.

19.     Cases were defined by isolates highly related to the outbreak strain by WGS (wgMLST). Ill persons were interviewed using the national Listeria Initiative questionnaire, and Minnesota cases were re-interviewed and their purchase histories further investigated using available shopper/card data.

20.     As part of the investigation, MDA collected additional sprout and seed samples and compiled invoices and distribution records. The FDA reviewed traceback information as part of the multi-state investigation.

21.     The investigation identified four cases in three states (Minnesota [2], Iowa, and Illinois), with specimen collection dates ranging from June 9 to October 3, 2024.

22.     All four ill persons were hospitalized; one pregnancy-associated illness resulted in fetal loss.

23.     The outbreak isolates were related within 0–20 alleles by wgMLST, and all four cases reported consuming sprouts prior to illness, with three specifically reporting Jack & the Green Sprouts brand alfalfa sprouts.

24.    FDA traceback for cases with exposure dates from approximately July 1, 2024, to October 3, 2024, converged on Jack & the Green Sprouts, a sprouter located in River Falls, Wisconsin.

25.    MDH reported that in February 2025, a routine retail sample of Jack & the Green Sprouts brand alfalfa sprouts tested positive for *L. monocytogenes*; once culture-confirmed, the 2025 isolates clustered with the October 2024 outbreak isolates within 0 1 alleles by wgMLST, and on February 7, 2025, Jack & the Green Sprouts recalled certain alfalfa sprouts due to potential *L. monocytogenes* contamination.

## KATE BOZIC'S INFECTION

26.    When initially interviewed, Kate Bozic reported consuming alfalfa sprouts from Lakewinds Coop. MDA collected alfalfa seeds associated with that initial exposure and tested them for *Listeria monocytogenes*; results were negative, and the laboratory also sprouted the seeds and retested them, with negative results again.

27.    On or around November 4, 2024, Kate was re-interviewed using a list of locations that received Jack & the Green Sprouts, provided by the FDA. She reported additional sprout exposures during the period of interest from Wedge Coop, Tao Organic Café, and possibly Seward Coop (all in Minneapolis).

28.    Credit-card purchase dates and transaction amounts provided by the Plaintiffs were used to reconstruct purchase details at Wedge Coop, which revealed purchases of Jack & the Green Sprouts alfalfa sprouts on June 18 and June 23, 2024.

29.    Further documentation provided by the Plaintiffs showed Tao Organic Café purchases occurred during July 7 – September 14, 2024; the exact date(s) Kate consumed sprouts in the restaurant's "Avocado Veggie Sandwich" was unknown. MDH reported that Tao used both

alfalfa and onion sprouts from Jack & the Green Sprouts on the Avocado Veggie Sandwich, and that Tao purchased those sprouts directly from Jack & the Green Sprouts.

30. On October 1, 2024, while approximately 17 weeks and 5 days pregnant, Kate presented for emergency medical care with severe symptoms, including high fever and signs concerning for intrauterine infection and pregnancy complications.

31. Kate suffered fetal demise and pregnancy loss during the course of her illness and hospitalization.

32. The clinical course and pathology findings were consistent with severe intrauterine infection, including advanced necrotizing chorioamnionitis and inflammation characteristic of amniotic fluid infection, and cultures obtained during Kate's hospitalization—including an aerobic culture of placental tissue (fetal side)—grew rare *Listeria monocytogenes*.

33. Public health investigation, including whole genome sequencing ("WGS"), linked Kate's *Listeria* isolate (placenta) to the sprouts outbreak strain cluster.

## DAMAGES

34. As a direct and proximate result of Defendant's conduct, Kate suffered serious illness, hospitalization, physical pain, emotional distress, and pregnancy loss, and has incurred medical expenses and other economic losses.

35. As a direct and proximate result of Defendant's conduct, Marin has suffered loss of consortium, including loss of services, support, aid, comfort, society, and companionship, including the loss associated with the pregnancy loss.

36. Plaintiffs have suffered general, special, incidental, and consequential damages in an amount to be proven at trial.

## CLAIMS FOR RELIEF

### COUNT I — STRICT PRODUCT LIABILITY (Defective Condition / Contamination)

37. Plaintiffs incorporate the preceding paragraphs by this reference as if each paragraph were set forth herein in its entirety.

38. Defendant manufactured, produced, processed, packaged, distributed, and sold sprouts for human consumption.

39. Defendant's sprouts were in a defective and unreasonably dangerous condition because they were contaminated with *Listeria monocytogenes* when they left Defendant's control.

40. Defendant's contaminated sprouts were a direct and proximate cause of Kate's listeriosis, pregnancy loss, and resulting damages.

41. Defendant is strictly liable for Plaintiffs' damages.

### COUNT II — NEGLIGENCE

42. Plaintiffs incorporate the preceding paragraphs by this reference as if each paragraph were set forth herein in its entirety.

43. Defendant owed a duty to exercise reasonable care in the sprouting, processing, sanitation, environmental monitoring, pathogen controls, packaging, storage, distribution, and recall practices relating to sprouts intended for human consumption.

44. Defendant breached its duties, including by failing to implement and/or follow adequate food-safety and sanitation controls sufficient to prevent contamination of its sprouts with *Listeria monocytogenes*.

45. Defendant's breaches include one or more of the following acts and omissions:

    a. Failing to adequately maintain, monitor, and control sanitary conditions in its sprouting/processing environment;

    b. Failing to properly operate and maintain facilities and equipment in a safe, clean, and sanitary manner;

Page 7 of 10

    c. Failing to implement, follow, and enforce adequate food safety policies and procedures sufficient to prevent contamination with *Listeria monocytogenes*;

    d. Failing to implement adequate environmental monitoring, verification, and corrective-action practices to prevent and control *Listeria* in the production environment;

    e. Failing to prevent cross-contamination and the transmission of *Listeria monocytogenes* through water, mist, equipment, employees, and facility surfaces;

    f. Failing to properly train employees and agents on sanitation and pathogen prevention;

    g. Failing to properly supervise employees and agents to ensure compliance with sanitation and pathogen-control procedures; and

    h. Failing to test and/or adequately verify that products and/or the production environment were free from microbial pathogens, including *Listeria monocytogenes*.

46. Defendant's negligence was a direct and proximate cause of Plaintiffs' injuries and damages.

## COUNT III — BREACH OF IMPLIED WARRANTY
### (Merchantability / Fitness for Ordinary Purpose)

47. Plaintiffs incorporate the preceding paragraphs by this reference as if each paragraph were set forth herein in its entirety.

48. Defendant impliedly warranted that its sprouts were merchantable and fit for the ordinary purpose of human consumption.

49. Defendant's sprouts were not merchantable or fit for ordinary consumption because they were contaminated with *Listeria monocytogenes*.

50. Defendant's breach directly and proximately caused Plaintiffs' injuries and damages.

## COUNT IV — FAILURE TO WARN (Inadequate Warnings / Instructions)

51. Plaintiffs incorporate the preceding paragraphs by this reference as if each paragraph were set forth herein in its entirety.

52.     Defendant knew or should have known that sprouts can present a foreseeable risk of contamination with dangerous pathogens, including *Listeria monocytogenes*, and that consumers—particularly pregnant people and other high-risk groups—face severe and foreseeable harm if exposed.

53.     Defendant failed to provide adequate warnings and/or instructions to consumers and purchasers regarding the risks of consuming its sprouts, including the risk of listeriosis and the heightened risk during pregnancy, and/or failed to provide timely and adequate warning once Defendant knew or should have known of contamination or outbreak conditions associated with its sprouts.

54.     Defendant's failure to warn was a direct and proximate cause of Plaintiffs' injuries and damages.

## COUNT V — NEGLIGENCE PER SE (AND/OR EVIDENCE OF NEGLIGENCE)

55.     Plaintiffs incorporate the preceding paragraphs by this reference as if each paragraph were set forth herein in its entirety.

56.     At all relevant times, Defendant was required to comply with applicable food-safety statutes and regulations intended to protect consumers from unsafe/adulterated food and foodborne illness, including requirements relating to sanitary production, hazard controls, pathogen prevention, and distribution of food products.

57.     Defendant violated one or more such statutes and regulations by, among other things, allowing sprouts to become contaminated with *Listeria monocytogenes*, distributing adulterated/unsafe food into commerce, and failing to employ required or reasonable measures to prevent contamination and protect consumers.

58.    The statutes and regulations Defendant violated were designed to prevent the type of harm that occurred here, and Plaintiffs are within the class of persons intended to be protected.

59.    Defendant's statutory and regulatory violations constitute negligence per se and/or evidence of negligence and were a direct and proximate cause of Plaintiffs' injuries and damages.

### COUNT VI — LOSS OF CONSORTIUM (Marin Buzic)

60.    Plaintiffs incorporate the preceding paragraphs by this reference as if each paragraph were set forth herein in its entirety.

61.    As a direct and proximate result of Defendant's wrongful conduct, Marin has suffered loss of consortium damages, including loss of services, support, aid, comfort, society, and companionship.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant in an amount greater than Fifty Thousand Dollars ($50,000), together with pre- and post-judgment interest, costs, and disbursements incurred herein, and such other relief as the Court may find just and equitable.

### ACKNOWLEDGMENT

The undersigned hereby acknowledges that sanctions may be awarded pursuant to Minn. Stat. §549.211.

Dated:  March 10, 2026                                PRITZKER HAGEMAN, P.A.

                                      By:      /s/ Eric Hageman
                                               Eric Hageman (MN #258180)
                                               100 University Avenue SE
                                               Minneapolis, MN 55414
                                               (612) 338-0202
                                               eric@pritzkerlaw.com

                                               *Attorney for Plaintiffs*